IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-01780-WDM

BARBARA A. STEWARD,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Miller, J.

Plaintiff Barbara A. Steward (Steward) appeals the final decision of Jo Anne B. Barnhart, Commissioner of Social Security, denying Hunter's application for disability insurance benefits and supplemental security income. Following review of the administrative record in this case, and the parties' written and oral arguments, I conclude that this matter should be remanded for further proceedings.

Background

Claimant Barbara Steward (Steward) was born September 30, 1942. Administrative Record (Record) at 41. She obtained a GED, and obtained additional vocational training in electronics and driving. *Id.* at 544. She has been employed as a caregiver, material handler, frozen food delivery-person, cable assembler, electric assembler, and waitress. *Id.* at 546-550.

Steward alleges that she became disabled on December 27, 2000 due to a knee

injury, fibromyalgia, neck and back injuries, carpal tunnel syndrome, and glaucoma. *Id.* at 91, 511.

A. <u>Treatment History</u>

The Record reveals the following relevant medical history.

From at least September 25, 1998 through August 13, 2002, Steward was seen regularly at Community Health Centers, Inc. (Community Health), generally reporting back, shoulder, and neck pain, anxiety, and depression.

In December 1999, Steward underwent knee surgery with Robert Brumfield, M.D., apparently as a result of a fall while trying to lift a client out of a bathtub. *Id.* at 199, 226. After the surgery, she reported that the "pain and popping" was gone, although she subsequently returned with complaints of knee aches and discomfort. Steward saw Dr. Brumfield five more times through May 22, 2000, at which time he filled out a report of maximum medical improvement and opined that she was permanently restricted to sedentary to light work with occasional walking on level surfaces, and minimal climbing and squatting. *Id.* at 206.

On January 5, 2000, Steward began seeing Jon Dedolph, a chiropractor, regarding her complaints of lower back pain, right thigh pain, neck stiffness, and groin pain. *Id.* at 229, 227. Dr Dedolph diagnosed her with pain from a leg injury and a knee injury, and treated her through at least May 29, 2003. *Id.* at 356-363.

On January 31, 2000, Steward was diagnosed by a physician at St. Luke's Eye Care (St. Luke's) with Glaucoma, where she was treated through at least June 19, 2001. *Id.* at 260. Although she continued to complain of eye issues such as "floaters,"

her Glaucoma was apparently "resolved," although St. Luke's continued to monitor it. *Id.* at 235-36.

On January 27, 2000, Steward presented to Michael R. Moore, M.D., complaining of residual right knee pain, and low back and right hip pain.  On March 7, 2000, Steward returned to Dr. Moore for a follow-up visit, when he made an additional diagnosis of myofascial low back and bilateral hip flexor pain.  *Id.* at 190.  Dr. Moore saw Steward again on May 3, 2000, and based on his own and Dr. Brumfield's records, found she was at maximum medical improvement and issued the following permanent work restrictions: "avoid crawling, healing[sic], squatting and repetitive ascending and descending of stairs.  She is to avoid lifting greater than 20 pounds."  *Id.* at 192.

On November 31, 2000, Steward presented to Scott D. Rosenquist, D.C., another chiropractor, with complaints of pain and aches in her hips, lower back, neck, head, wrists, and elbows, resulting from an automobile accident that occurred on November 1, 2000.  *Id.* at 268-70.  *Id.*   Dr. Rosenquist treated Steward with modalities, soft myofascial work, and "possibly grade one manual techniques."  *Id.* at 271.  Dr. Rosenquist treated Steward through at least July 23, 2001, when he indicated that his office had seen Ms. Stewart for a total of 33 visits.  He noted diagnoses of "cervical stenosis[1] at C4/5/6 and moderate C4/5/6 degenerative uncovertebral osteoarthropathy with likely resulting compression of the C5 and C6 nerve roots, and mold to moderate

---

[1]Stenosis is a "narrowing of the lumbar or cervical spinal canal....[which] can cause compression on nerve roots resulting in pain or weakness of the legs."  Nat'l Library of Medicine, Medline Plus, Medical Encyclopedia, *at* http://www.nlm.nih.gov/medlineplus/ency/imagepages/9941.htm (updated August 16, 2004).

L5-S1 degenerative disc disease," apparently based on Dr. Anderson's MRI reports (discussed below). *Id.* at 264.

On June 7, 2001, William D. Anderson, D.C., reviewed a February 14, 2001 cervical MRI, and opined that there was evidence of "multi-level cervical degenerative disc disease and moderate right "C4-5, C5-6, and C6-7 degenerative uncovertebral osteoarthropathy contributing to foraminal compromise" and likely resulting in compression of two nerve roots. *Id* at 296. He also reviewed a March 5, 2001 Lumbar Spine MRI and opined that there was minor and mild degenerative disc dessication of several joints, as well as mild to moderate L5-S1 degenerative disc disease. *Id.* at 295.

On January 9, 2002, Steward was seen by at Community Health when, after falling while delivering phone books, she injured her right hand. *Id.* at 289. An x-ray indicated no fracture or dislocation, but documented "chronic appearing arthritic changes." *Id.* at 292.

On April 8, 2002, Steward was seen at Community Health by James D. Brooke, M.D., to recheck her fibromyaglia, chronic pain syndrome, right hand pain, and anxiety. *Id.* at 348.[2] He made no objective findings, but gave her a rheumatology referral. *Id.*

On August 1, 2002 Steward was seen by John T. Lynn, M.D., a rheumatologist, with complaints of pain all over her body, especially her right hand, wrist, right hip, knee, and neck. *Id.* at 344. Dr. Lynn found a full range of motion, but that "all fibromyalgia points [were] tender." *Id.* at 345. He diagnosed her with fibromyalgia, right trochatneric

---

[2]Dr. Brooke appears to have been Steward's primary physician, regularly seeing her throughout the relevant time for her pain and mental health complaints.

4

bursitis,[3] neck and back pain, and depression. *Id.*

On August 13, 2002, she saw Dr. Brooke again, who noted that Dr. Lynn had confirmed that she had fibromyalgia *Id.* at 340. His objective findings were mostly normal, with the exception of her "gait and station. *Id.* at 342. She returned to Dr. Brooke again on April 16, 2003, with complaints of anxiety, fatigue, fibromyalgia, knee pain, and bowel problems. *Id.* at 339. Dr. Brooke noted no physical changes, but due to the psychological strain Steward was facing, Dr. Brooke indicated that he might start her on antidepressants or increase her anxiety medications. *Id.*

On May 21, 2003, Steward was seen by Loren Kanarr, a psychologist at Pikes Peak Mental Heath. *Id.* at 321. In an outpatient global assessment form, the psychologist documented an extensive interview and diagnosed Steward with a moderate to severe major depression disorder, "manifested by 9 out of 9 criteria." *Id.* at 328. The psychologist also diagnosed a panic disorder in partial remission and bereavement due to the loss of family members, and opined that her current GAF was 50. *Id.* at 329. Dr. Kamar treated Steward through at least August 22, 2003, and generally found her mood to be "mildly dysphoric."[4] *Id.* at 528-536.

B.     Consultive History

---

[3]Bursitis is "inflammation of the fluid filled sac (bursa) that lies between a tendon and skin, or between a tendon and bone. Nat'l Library of Medicine, Medline Plus, Medical Encyclopedia, *at* http://www.nlm.nih.gov/medlineplus/ency/article/000419.htm (Updated August 20, 2004).

[4]Dysphoria is "an emotional state characterized by malaise, anxiety, depression, or unease." Mayoclinic.com, Mental health definitions, *at* http://www.mayoclinic.com/invoke.cfm?objectid=DF34B32F-6F85-45E0-8FE85ECACDD48CC0 (March 10, 2005).

On November 12, 2001, Steward underwent a psychological consultative exam with R. Terry Jones, M.D. *Id.* at 272. Dr. Jones first noted that, despite her claims of pain and limitations, "she does not appear to be significantly impaired, at least for things like sitting and moderate amount of standing and walking." *Id.* at 273. Dr. Jones found that although she complained of mild to moderate symptoms of dysthymia,[5] her Mental Status Examination was entirely within normal limits, and that she did not manifest any significant symptoms of a depressive or anxiety disorder. *Id.* He opined that, at worst, she suffered from a mild dysthymic condition that was well controlled by minimal medications, and she appeared, from a psychiatric point of view, to be "quite employable." *Id.* at 273, 277.

On November 14, 2001, Steward underwent a physical examination with Tim Moser, M.D. *Id.* at 278. Dr. Moser generally found an absence of muscle spasms, trigger points, crepitus, or joint effusion, as well as normal muscle and grip strength, reflexes, and sensory perceptions. *Id.* at 281. Based on his exam, review of supplied clinic progress notes, and Steward's statements, he diagnosed her with right knee pain, myofacial pain, chronic neck and back pain, carpal tunnel syndrome, and glaucoma, and opined that: (1) she was limited to standing and walking six hours in an eight hour workday because of her history of knee pain; (2) she was limited to lifting and carrying 20 pounds occasionally based on her history of back pain; (3) "there are frequent

---

[5]Dysthemia is "a chronic form of depression, characterized by moods that are consistently low, but not as extreme as other types of depression." Nat'l Library of Medicien, Medline Plus, Medical Encyclopedia, *at* http://www.nlm.nih.gov/medlineplus/ency/article/000918.htm (updated December 9, 2004).

6

postural limitations on bending, stooping, and crouching secondary to the claimant's history of back pain;" and (4) "there are frequent manipulative limitations on reaching, handling, feeling, and grasping secondary to the claimant's history of carpal tunnel syndrome." *Id.* at 281-82.

C.	Administrative Proceedings

After Steward's application for disability insurance benefits was denied, Steward requested a hearing, which was held on June 12, 2003. Steward, who was represented by counsel, testified regarding how her alleged impairments impacted her daily life. Next, Denis James Duffin, a vocational expert (VE), testified that a person limited to light work, who could stand, sit, and walk for six hours, with no kneeling, climbing, crawling, etc., could work as an electronics assembler. *Id.* at 573.

On October 16, 2003, the ALJ issued her decision, making the following relevant findings: (1) Steward suffered from degenerative joint disease of the knee with a history of arthoroscopy, mild to moderate L5-S1 degenerative disk disease, a history of glaucoma, a major depressive disorder, and "rule out cannabis abuse," all of which were severe disabilities but which did not meet or medically equal one of the listed impairments under the regulations; (2) Steward's allegations regarding her limitations were not totally credible; (3) Steward had the Residual Functional Capacity (RFC) to stand, walk, and sit for six hours a day, lift, carry push and pull twenty pounds occasionally and ten pounds frequently, never crawl, kneel, or climb ropes, ladders or scaffolds, occasionally crouch and climb, frequently reach, handle and feel, and understand, remember and carry out simple instructions; (4) Steward's RFC did not

prevent her from performing her past relevant work as "electronics assembly worker (cable);" and (5) Steward's degenerative joint disease of the knee, history of glaucoma, major depressive disorder and possible cannabis abuse did not prevent her from performing her past relevant work. *Id.* at 25.

On July 1, 2004, the Appeals Council denied Steward's request for review of the ALJ's decision, rendering the denial of benefits final. *Id.* at 9. On August 26, 2004, Steward timely initiated this appeal.

## Standard of Review

I review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in the record as a whole and whether she applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an

8

> impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).  Here, the ALJ denied benefits at step four, finding that Steward could perform past relevant work; i.e., as an electronics assembler.  Steward raises three general objections: the ALJ erred by (1) failing to articulate what standard was used to determine substantial gainful activity; (2) inaccurately determining her RFC; and (3) incorrectly evaluating her fibromyalgia.

1. Substantial Gainful Activity (SGA)

Steward argues that the ALJ "failed to articulate what Standard was used to Determine Substantial Gainful Activity."  The Commissioner's regulations define disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905.  However, the regulations also provide that the determination of disability (i.e., whether the claimant can perform substantial gainful activity (SGA) is accomplished through the five-step evaluation process described above.  *See Trimiar*, 966 F.2d at 1329.  *See also* 20 C.F.R. § 416.920(a).  There is no indication that the ALJ failed to follow this evaluation process.

Steward may be arguing that the ALJ erred by considering the facts that Steward engaged in work-like activity–including doing "a little care for other people" and delivering phone books–after the alleged onset date of her disability.  *See* Record, at

21.[6]  It is not clear that the ALJ found that "a couple of hours of work tips the scales" in favor of a finding of disability.  See Pl.'s Reply Br., at 3.  Rather, the ALJ mentioned this issue in discussing Steward's credibility, which was proper.  See Branum v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004) (to determine credibility of pain testimony, ALJ should consider, inter alia, nature of daily activities).

2.      Residual Functional Capacity (RFC)

Steward argues that the ALJ failed to accurately determine her RFC.  "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."  Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Steward first argues that the ALJ failed to consider the fact that she had arthritis in her right hand.  The ALJ "specifically exclude[d] any restrictions on the use of the upper extremities, as there is no evidence for such limitations in the record."  Record, at 23.  Although she mentioned a January 2002 x-ray of Steward's hand, noting that it showed "diffuse mild bond demineralization without dislocation, fracture, bone destruction, or other acute abnormality," id. at 22, she did not mention that the x-ray also documented "chronic appearing arthritic changes."  Id. at 290.

I do not find that such an omission was error.  First, I note that the ALJ mentioned, and therefore clearly considered, the x-ray even if she did not mention its arthritic findings.  Moreover, these specific findings appear to have little significance–although the x-rays were ordered by Steward's regular healthcare

---

[6]The ALJ did not find that Steward had engaged in SGA after the alleged onset date.  See id., at 25.

10

provider, no physician in the record ever discussed them. Further, I note that the x-ray was taken as a result of a fall, not chronic hand pain. Finally, Steward does not allege disability due to arthritis in her hand.

It is well-established in this Circuit that an ALJ need not discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). I do not find that the arthritic findings of the x-ray were significantly probative, and the ALJ did not err by not discussing them. *See id.*

Steward also argues that the ALJ erred by rejecting a Dr. Rosenquist's finding that she had cervical stenosis at C4/5/6 based on the absence of any objective medical report when the record contained a report by Dr. Anderson regarding a cervical spine MRI that indicated evidence of "multi-level degenerative disc disease" and "moderate right C4-5, C5-6, and C6-7 degenerative uncovertebral osteoarthropathy...which is likely resulting in compression of the exiting right C5 and C6 nerve roots." *Id.* at 296.

Because the ALJ rejected Dr. Rosenquist's cervical stenosis diagnosis based on the absence of objective medical evidence, she clearly did not consider the records of the cervical spine MRI. "[T]he Act makes it clear that the [Commissioner] must consider all relevant medical evidence of record in reaching a conclusion as to disability." *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) (finding error based on ALJ's apparent failure to consider certain x-rays.) *See also Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (ALJ's findings must be supported by substantial evidence, and she must consider all relevant medical evidence in making those findings). Where a court determines that "the ALJ did not apply the appropriate standard by considering all the evidence before [her], the proper remedy is reversal and

remand." *Baker*, 886 F.2d at 291.

At oral argument, the Commissioner argued that, because the record contained no indications of any functional manifestation of a neck impairment, the ALJ's overlooking the MRI was harmless error. The Tenth Circuit has recognized that the principle of harmless error may apply in social security disability cases. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). For instance, harmless error may exist when the ALJ (1) makes a technical error "minor enough not to undermine confidence in the determination of the case;" (2) implements a procedural impropriety that does not alter the evidence before the ALJ; and (3) fails to make a dispositive finding of fact when the finding is (a) based on material the ALJ at least considered; and (b) no reasonable administrative factfinder could have resolved the factual matter in any other way. *Id.* (internal citations omitted).

I am unable to find that the ALJ's overlooking objective medical evidence that could support her allegation of a disabling neck injury fits into any of these categories, or may otherwise constitute harmless error in light of the Tenth Circuit's admonition that an ALJ consider all relevant medical evidence. Consequently, I find that the proper remedy under the circumstances is reversal and remand. *Baker*, 886 F.2d at 291.

Steward next argues that the ALJ erred by relying on the opinion of consulting physician Dr. Moser because he was not provided the relevant MRIs and x-rays. The Commissioner does not address this argument.

20 C.F.R. § 404.1517 provides that the Social Security Administration will "give the [consultative] examiner any necessary background information about [the claimant's] condition." At least one court has found error when the ALJ failed to ensure

that a consultative examiner necessary background information regarding the claimant's condition.  *See Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83889, at *5 (N.D. Cal. 1996) (unpublished slip opinion).

However, I cannot conclusively determine that Dr. Moser was not provided with x-ray and/or MRI records.  His report indicates that he reviewed "[s]upplied clinic progress notes," and his report does not, for instance, note an absence of x-ray or MRI records.  More fundamentally, Steward demonstrate that such records were necessary; i.e., that they would have changed his diagnoses.  Finally, *Ladue* is distinguishable because (1) there the ALJ failed to respond to a request from the claimant's counsel that the medical file be sent to the examiner; and (2) the examiner in *Ladue* was provided with only one progress note.  Steward does not argue that the ALJ refused to provide information to Dr. Moser, nor was the information provided as minimal as that in *Ladue.*  Consequently, I do not believe that Steward has established error on these grounds.

Steward next argues that the ALJ failed to address Dr. Brumfield's opinion that Steward was limited to sedentary to light work with occasional walking on level surfaces.  *See* Record, at 197.  Dr. Brumfield was a treating physician, and therefor the ALJ was required to undertake the analysis set forth in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), which she did not.  The Commissioner argues that this error was harmless, because Dr. Brumfield's opinion does not conflict with the ALJ's RFC.  I disagree; the ALJ's finding that  Steward was able to walk for six hours every day (a limitation which was included in the relevant hypothetical regarding the electronics assembler position) appears to be inconsistent with Dr. Brumfield's opinion

13

that she could, at most, be employed in a position that required only occasional walking. The Commissioner also argued that Dr. Brumfield's opinion was contradicted by that of Dr. Moore, and that his opinion issued prior to Steward's alleged onset date. Either of these are arguably legitimate reasons[7] to discount Dr. Brumfield's opinion–however, the ALJ did not rely upon them, and the Tenth Circuit has instructed that an ALJ's decision must be "evaluated based solely on the reasons stated in the decision." *Robinson*, 366 F.3d at 1084. Consequently, the ALJ's failure to discuss Dr. Brumfield's opinion was error.

Additionally, and although Steward does not raise the issue herself, the ALJ erred in her consideration of Steward's major depressive disorder. First, in step three of the analysis, the ALJ stated, without discussion, that "her major depressive disorder is not sufficiently severe to meet the "B" criteria of Listing section 12.04." Record, at 20. An ALJ is "required to discuss the evidence and explain why [s]he found that [claimant] was not disabled at step three." *Clifton*, 79 F.3d at 1009. More fundamentally, the ALJ rejected the findings of Dr. Kanarr, Steward's psychologist, without providing an adequate reason for doing so. Although the ALJ noted Dr. Kanarr's findings and did not explicitly reject or discount them, she clearly chose to rely instead on the findings of consultative examiner, Dr. Jones. The ALJ gave no reason for choosing Dr. Jones' opinion over that of Dr. Kanarr, and therefore I cannot determine whether she had a

---

[7]With regards to the latter, I note that, although the opinion did issue before the alleged onset date, Dr. Brumfield labeled the work restrictions as "permanent." Record, at 206.

legally sufficient reason for doing so.[8]  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (ALJ must provide specific, legitimate reasons for rejecting opinion of any physician, including nontreating physician); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (finding error when"this court [is not] able to ascertain how or why the ALJ" dealt with a physician's opinion in a particular manner).  Consequently, the ALJ erred in her consideration of Steward's depression and anxiety disorder.

3.  Fibromyalgia

Steward argues that the ALJ erred by rejecting her allegation of fibromyalgia. The ALJ noted Dr. Lynn's diagnosis of fibromyalgia, but rejected it because it was without any objective basis.

First, despite identifying Dr. Lynn as a treating physician, the ALJ failed to under take the *Watkins* analysis.  Under *Watkins*, ALJ must first determine whether the opinion is entitled to controlling weight as follows:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

*Id.* (internal quotations omitted).

---

[8]The ALJ did note that there was no evidence Steward received treatment following Dr. Kanarr's examination. This was incorrect, as Dr. Kanarr treated Steward through at least August 2003. This misstatement is excusable, as the evidence of the additional treatment was not before the ALJ.  *See* Record at 526-539. Irregardless of any fault on the ALJ's part, the lack of subsequent treatment cannot be used to reject Dr. Kanarr's findings.

Additionally, at oral argument the Commissioner questioned whether Dr. Kanarr had a treating physician relationship with Steward. However, even if not, the ALJ was required to provide specific, legitimate reasons for rejecting her opinion.  *See Doyal*, 331 F.3d at 764.

However, a finding that the opinion is not entitled controlling weight does not conclude the analysis. *Id.* The ALJ must next weigh the opinion using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Furthermore, the ALJ may "reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson*, 366 F.3d at 1082.

Here, the ALJ did, implicitly at least, find that Dr. Lynn's opinion was not supported by appropriate techniques; i.e., objective medical evidence. However, Dr. Lynn did appear to base his opinion on the fact that "all fibromyalgia points" were tender. *Id.* at 345. Although the ALJ noted that Dr. Lynn "did not provide further explanation for this statement," *id.* at 22, such ambiguity triggered the ALJ's duty to further develop the record. *See Robinson*, 366 F.3d at 1084. *See also* 20 C.F.R. § 404.1512(e)(1) ("we will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"). *Cf. White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (no failure by ALJ when he felt the records received from treating physician were "adequate" for

16

consideration").

Furthermore, even assuming the ALJ correctly determined that Dr. Lynn's opinion was not entitled to controlling weight, there is no indication in the record that she weighed the opinion using any of the other factors.

In response, the Commissioner argues that such error, if any, was harmless, because even if Steward had fibromyalgia, Dr. Lynn provided no opinion regarding any limitations, and substantial evidence supports the ALJ's RFC. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("[i]t is not enough to show that [claimant] had received a diagnosis of fibromyalgia...since fibromyalgia is not always (indeed, not usually) disabling"). Were the ALJ's treatment of Dr. Lynn's opinion the only issue in this case, I might agree with the Commissioner that the error was harmless. However, because I have already determined that this case should be remanded, the ALJ should revisit this issue.

### Conclusion

Based upon my review of the record in this case, I find that the ALJ failed to adequately examine all the medical evidence in the record and address the opinions of Steward's treating physicians. Accordingly, the determination that Steward is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on June 21, 2005.

BY THE COURT:

/s/ Walker D. Miller
United States District Judge